IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNY DANRICH, as the Special Administrator of the Estate of Decedent Christopher Jones, ) ) ) ) Plaintiff, ) ) v. ) ) JASON ETTLING and MONROE COUNTY SHERIFF'S DEPARTMENT, ) ) ) Defendants. ) | Case No. 09-CV-0176-MJR-DGW |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Johnny Danrich is the administrator of the estate of the late Christopher Jones, formerly a citizen of the State of Missouri. Danrich sued Jason Ettling and the Monroe County Sheriff's Department on March 5, 2009. Ettling is a sheriff's deputy with the department, and both he and the Department have Illinois citizenship. Danrich alleges that Ettling negligently caused Jones' death in connection with a vehicle crash and that Ettling's conduct was willful and wanton. On that basis, Danrich claims that Ettling and the Department are liable under Illinois wrongful death and survival statutes. *See* 740 Ill. Comp. Stat. 180/1 (wrongful death); 755 Ill. Comp. Stat. 5/27-6 (survival). Because Danrich claims damages in excess of $75,000, the Court has subject-matter jurisdiction over this state-law case under the federal diversity statute. 28 U.S.C. § 1332 (2006); *see also* 28 U.S.C. § 1332(c) (noting that the citizenship of the representative of a decedent's estate is the same as the decedent for jurisdictional purposes).

Now pending is the Defendants' fully briefed and argued motion for summary judgment (Doc. 17), in which the Defendants argue that there are no material issues of fact on their affirmative defenses and that they are entitled to judgment as a matter of law. However, the Court

holds that a reasonable fact-finder could find in Danrich's favor on the affirmative defenses, so Court will deny the motion.

### Standard of decision

Summary judgment is appropriate where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 563 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(c)); *accord Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008); *Levy v. Minn. Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008). In ruling on a summary judgment motion, the Court construes all facts and reasonable inferences in the light most favorable to the respondent. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009); *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).

If the movant meets its burden on summary judgment, the responding party cannot rest on the pleadings. Rather, the respondent must provide evidence on which a reasonable fact-finder could find for the respondent. *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). As the Seventh Circuit recently explained:

> [T]he non-moving party must submit evidence that there is a genuine issue for trial. The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the nonmoving party.

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 531–32 (7th Cir. 2009) (citation omitted) (citing *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006)).

Stated another way, to counter a summary judgment motion, the respondent may not simply reiterate the allegations contained in the pleadings; more substantial evidence must be presented. A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute

between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [non-moving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

Viewing the facts in the light most favorable to the non-moving party (here, Danrich), the Court will assume the following facts as true for the purposes of deciding the motion for summary judgment.

**Facts**

On August 16, 2008, the sun set at 7:53 PM and the end of civil twilight occurred at 8:21 PM. Ettling began his shift as a sheriff's deputy that night at 8:00 PM. He left his residence in Columbia, Illinois at that time but shortly afterwards received a call from another deputy asking him to pick up some food. He proceeded to Valmeyer, Illinois to pick up the food from the deputy's home.

The route to the deputy's home included Bluff road, a heavily travelled road in the Valmeyer area. At about the same time as the start of Ettling's shift, six friends were riding their motorcycles northbound on Bluff Road, a heavily travelled road in the Valmeyer area. They rode in two groups. The lead group was James Scott, Dewone Lemon and Terrance Strickland. The trailing group was Christopher Jones, Eric Brown and Nathan Haney. Eventually on his route while travelling southbound on Bluff Road, Ettling encountered the lead motorcycle group travelling in the opposite direction. Ettling's squad car was equipped with radar attached to the dashboard of his squad car. The radar started pinging and indicated that the motorcyclists were travelling at 90 MPH. The speed limit of the road at that point was 55 MPH.

Ettling decided to issue the motorcyclists traffic citations. To do that, he slowed down, pulled his vehicle to the right at what he thought was a safe part of the roadway, stopped, waited for

3

the motorcycles to pass, looked both directions to make sure the road was clear and then attempted to make a U-turn. Around the same time that the first group passed Ettling, the trailing group had rounded a bend in Bluff Road. Jones was in the lead of that group, followed by Brown and Haney in that order. Brown saw that Ettling had his head outside the patrol car window. Once the first group had passed Ettling, Ettling continued to look back at the first group and began executing a U-Turn across the road.

Half-way through the U-turn, Ettling heard an engine noise and then the sound of an object hitting the patrol car. What had happened was that his car had crashed into Jones' motorcycle. Ettling did not see Jones prior to the U-turn and only noticed Jones a brief second before the collision. It was not dark at the time of the collision. Jones died as a result of the collision.

Ettling had this to say at deposition concerning his state of mind at the time of the accident:

> Q: So in that situation where you have to make a U-turn to get a speeder, what is your normal practice as to when you activate the flashing lights and siren?
>
> A: Usually when I'm in the same direction of travel as they are.
>
> Q: All right. When you began to make your U-turn to get the speeder in this instance, did you see yourself as responding to an emergency situation?
>
> A: No, sir.
>
> Q: Did you see yourself responding to a routine situation?
>
> A: I would say it's routine.
>
> Q: Did you see yourself as pursuing a violator?
>
> A: When I got behind him, yes.

(Dep. of Ettling 32–33.)

Other individuals saw a group of motorcyclists near the time of the accident. The Valmeyer fire chief Floyd Floarke saw four motorcyclists on Bluff Road travelling very fast. The last

4

motorcyclist had no headlight, lagged behind and had a dark colored motorcycle. He responded to the accident with Ettling. He assumes that the motorcyclists in the accident were the same as those that passed him on Bluff Road given the timeframe, but he could not tell for sure because it was too dark. Another observer was Benjamin Neff, who saw two groups of motorcycles pass him around 8:00 PM, but did not know how many. He estimated 3–5 in the first group and 1–2 in the second; all of them seemed to be speeding. There was a motorcycle without a headlight in the second group, but behind him by 30 feet was a motorcycle with a headlight. All were wearing black and the cyclist without a headlight had a black motorcycle. Despite the fact that the cyclist was in black and had no headlight, Neff could see him from about 300 feet. Another observer was William Dickerson. He and his wife were travelling south on Bluff Road past New Valmeyer Road. They saw three motorcycles heading northbound. A half-mile later, they saw three more motorcycles, with the last one in the group without a headlight. It was dark at the time and around 7:30 or 8:00. Dickerson could see the motorcyclist without a headlight from about 40 feet away. According to Brown, though, Jones had his headlight on "just prior to the accident." (Brown Affid. ¶ 13.)

**Analysis**

There are issues of fact surrounding both of the affirmative defenses that the Defendants assert in their motion for summary judgment. Because a reasonable jury could conclude that Ettling was not executing the law at the time of the accident and that Jones had no fault which was a proximate cause of his death, the Court cannot grant summary judgment.

Tort Immunity Act

Ettling and the Department argue that §§ 202 and 109 of the Local Government and Governmental Employees Tort Immunity Act (Tort Immunity Act), 745 Ill. Comp. Stat. 10/2-202, 2-109 (2008), preclude any liability against them for the death of Jones. With respect to Ettling, because he is a public employee, he argues that he is "not liable for his act or omission in the

execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *Id.* § 202, 745 Ill. Comp. Stat. 10/2-202. Additionally, the Department, as "[a] local public entity," argues that it "is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* § 109, 745 Ill. Comp. Stat. 10/2-109. These are affirmative defenses, meaning that the parties asserting the defenses bear the burden of proof. *See Fitzpatrick v. City of Chicago*, 492 N.E.2d 1292, 1294–95 (Ill. 1986) (noting that §§ 109 and 202 of the Tort Immunity Act are affirmative defenses); *Mich. Ave. Nat'l Bank v. County of Cook*, 732 N.E.2d 528, 535 (Ill. 2000) ("The immunities afforded to units of local government under the Tort Immunity Act operate as an affirmative defense which, if properly raised and proven by the public entity, precludes a plaintiff's right to recover damages." (quoting *Zimmerman v. Vill. of Skokie*, 183 Ill.2d 30, 43–44, 697 N.E.2d 699 (1998))). However, these statutes may not actually save Ettling, or at least that is what Danrich argues. There is a split of authority in Illinois regarding the applicability of the Tort Immunity Act to vehicular matters that the Supreme Court has not yet resolved. Illinois' Fifth District Court of Appeals holds that the Vehicle Code covers because it is more specific. *Bradshaw v. City of Metropolis*, 688 N.E.2d 332, 335 (Ill. App. 5th Dist. 1997). However, the other four appellate districts have rejected that case and hold that the Tort Immunity Act covers government employees when driving emergency vehicles. *Lanning v. Harris*, 796 N.E.2d 667 (Ill. App. 3d Dist. 2003); *Young v. Forgas*, 720 N.E.2d 360 (Ill App. 4th Dist. 1999); *Sanders v. City of Chicago*, 714 N.E.2d 547 (Ill. App. 1st Dist. 1999); *Carter v. DuPage County Sheriff*, 710 N.E.2d 1263 (Ill. App. 2d Dist. 1999).

The parties want the Court to resolve this conflict in authority by predicting how the Supreme Court of Illinois would resolve this split. *See Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir. 1997) (citing *Smith v. Equitable Life Assurance Soc'y of the U.S.*, 67 F.3d 611, 615 (7th Cir. 1995)) (noting that a court sitting in diversity when applying Illinois law attempts to predict how the Illinois Supreme Court would decide the issues presented). At this point in the case, the Court need

not go that far. The Court will assume without deciding that the Tort Immunity Act applies to the case. Even with this assumption, the Defendants cannot get summary judgment because there are issues of fact as to whether Ettling was executing the law at the time of the collision.

The Tort Immunity Act does not apply during all hours of a public employee's duty, "be he a building inspector or a policeman." *Arnolt v. City of Highland Park*, 282 N.E.2d 144, 147 (Ill. 1972). Based on the plain language of the statute, § 202 only immunizes a public employee from liability "for the employee's negligent 'act or omission in the execution or enforcement of any law,'" which requires that the employee be "*actually* engaged in the execution or enforcement of a law." *Barnett v. Zion Park Dist.*, 665 N.E.2d 808, 814 (Ill. 1996) (quoting Tort Immunity Act § 202); *accord Zimmerman v. Vill. of Skokie*, 697 N.E.2d 699 (Ill. 1998). Effectively, the execution/enforcement criterion differentiates when public employees are held to a normal standard of care and when their standard of care can be less. The inquiry of whether a public employee was actually enforcing or executing the law is an issue of fact. *Carter*, 710 N.E.2d at 1269 (citing *Aikens v. Morris*, 145 Ill.2d 273, 286, 583 N.E.2d 487 (1991)); *Simpson v. City of Chicago*, 599 N.E.2d 1043, 1044 (Ill. App. 1st Dist. 1992). If Danrich has enough historical evidence on which a jury could find that Ettling was not enforcing or executing the law at the time of the collision, then he can avoid summary judgment.

It is undisputed that Ettling, before executing the U-turn, was not executing or enforcing the law even though he was on duty. He was travelling to a co-worker's house to pick up some leftover food. This by itself, though, is not determinative, because Ettling's testimony indicates that while en route he may have begun executing or enforcing the law. The only evidence on this point is Ettling's own testimony. According to Ettling, he encountered speeding motorcyclists which caused him to make a U-turn in order to cite them for speeding violations. Danrich has nothing else determinative on this question.

Ettling's testimony of his conduct takes this case outside of the bounds of *Leaks v. City of Chicago*, which Danrich uses to try and stop summary judgment. *Leaks* involved a police officer who was "cruising" when he observed suspicious individuals in front of an apartment building. He believed that the behavior was similar to the "methods used by some narcotics dealers to peddle their drugs" and that the behavior constituted loitering. 606 N.E.2d 156, 157 (Ill. App. 1st Dist. 1992). Although the trial court found for the officer, the appellate court reversed because the officer's testimony "was conclusory in nature as to suspected violation of state law or municipal ordinance." *Id.* at 159. But Ettling's testimony is not conclusory. He observed through reliable equipment that the motorcyclists were speeding excessively. This is beyond mere suspicion and conclusory testimony.

*Simpson v. City of Chicago*, though, makes the case go to trial. 599 N.E.2d 1043. The officer in that case was on his way to investigate a missing person report after the dispatcher told him to investigate. He hit a girl on a bicycle en route. The trial court found this to be execution of the law and granted summary judgment, but the appellate court reversed. Because the officer was engaged in routine patrol duties (responding to non-emergency call), the Court could not find as a matter of law that the officer was engaged in the execution or enforcement of a law. *Id.* at 1044–45.

While the case might be distinguishable in the sense that Ettling was not investigating, his deposition testimony puts what he was doing at the time of the U-turn into question. He testified that he was not responding to an emergency situation, that he considered the U-turn and the issuance of tickets a routine situation and that he was pursuing the violators only once he got behind them. A jury could reasonably conclude from this testimony that Ettling was engaged in routine patrol duties at the moment of collision. The jury could also conclude that Ettling was engaged in pursuit at the moment of collision. Because it could conclude either, summary judgment is inappropriate.

A reasonable jury could conclude on the basis of the discovery that Ettling was performing routine duties at the time of the collision, meaning that he was not involved in execution or enforcement of the law at the time of the supposed negligent conduct. Even if the Court assumes that the Tort Immunity Act applies to this case, neither Ettling nor the Department can establish their defense under the act for summary judgment purposes.

Comparative Negligence

The Defendants also rely on the defense of comparative negligence at this part of their case for summary judgment. Their reliance is misplaced. There are issues of fact on every element of comparative negligence.

Although the common-law bar of contributory negligence no longer exists in Illinois, *Walsh v. Emergency One, Inc.*, 26 F.3d 1417, 1421 (7th Cir. 1994) (citing *Alvis v. Ribar*, 421 N.E.2d 886, 897–98 (Ill. 1981)), Illinois has adopted by statute a defense of comparative negligence in "actions on account of death, bodily injury or physical damage to property in which recovery is predicated upon fault," 735 Ill. Comp. Stat. 5/2-1116(c) (2008). The "fault on the part of the plaintiff . . . which is a proximate cause of the death . . . for which recovery is sought," *id.* § 2-1116(b), is "compared with the fault of all tortfeasors whose fault was a proximate cause of the death . . . for which recovery is sought," *id.* § 2-1116(c). If the plaintiff was more at fault than the tortfeasors for his injury, then the plaintiff is completely barred from recovery. *Id.* § 2-1116(c). Otherwise, if the plaintiff was equally or less at fault than the tortfeasors, then the recovery is reduced based on the plaintiff's degree of fault. *Id.* A defendant has the burden of proving a plaintiff's comparative negligence. *Zook v. Norfolk & W. Ry. Co.*, 642 N.E.2d 1348, 1358 (Ill.App. 4th Dist. 1994) (citing *Casey v. Baseden*, 490 N.E.2d 4, 6 (Ill. 1986)).

"Ordinarily, the question of contributory negligence is a question of fact for the jury" under Illinois law. *West v. Kirkham*, 566 N.E.2d 523, 525 (Ill. App. 4th Dist. 1991). The Court can decide

the issue as a matter of law, though, "when all reasonable minds would agree that the evidence and reasonable inferences therefrom, viewed in a light most favorable to the nonmoving party, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand." *Id.*; *accord Basham v. Hunt*, 773 N.E.2d 1213, 1226 (Ill. App. 1st Dist. 2002). The Defendants argue that the evidence at summary judgment is overwhelmingly in their favor such that the Court can treat this as a matter of law. It is not. There is support for Danrich's position in the record. In particular, the affidavit of Brown provides everything to refute a claim of comparative negligence. He saw Ettling's patrol car crash into Jones and saw that Jones had his light on right before being hit. That is enough for a reasonable fact-finder to conclude that any fault attributable to Jones which was a proximate cause of his death did not exceed 50%, so the Court cannot grant summary judgment based on comparative negligence.

## Conclusion

The two theories on which the Defendants seek summary judgment against Danrich have issues of fact. A reasonable jury could find that Ettling was not enforcing or executing the law and that any fault attributable to Jones that proximately caused his death did not exceed 50%. The Court accordingly **DENIES** the Defendants' motion for summary judgment (Doc. 17).

**IT IS SO ORDERED.**

**DATED April 27, 2010.**

                                                                              s/ Michael J. Reagan
                                                                              **MICHAEL J. REAGAN**
                                                                              **United States District Judge**